# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| MICHAEL MCAFEE, | ) |
| Petitioner, | ) |
| v. | ) Case No. 1:21-cv-00090-SRC |
| BILL STANGE, | ) |
| Respondent. | ) |

## Memorandum and Order

Unable to tolerate their break-up, McAfee terrorized Keisha Powell. Doc. 14-4 at pp. 2–3. He called and texted her constantly, violently appeared at her home, and drove back-and-forth past her office throughout the day. *Id*. at p. 2. One morning, after months of harassment, a tenant at Powell's office building observed McAfee standing inside the building's entrance, and about thirty minutes later, a co-worker found Powell slumped over in her chair, covered in blood. *Id*. at p. 3. After going on-the-run, police arrested McAfee in Arizona, and McAfee confessed that he "ended her life." *Id*. at p. 4.

A state-court jury found McAfee guilty of one count of first-degree murder and one related count of armed criminal action. Doc. 14-10 at pp. 836–37. The state court sentenced McAfee to life without parole for first-degree murder and life for armed criminal action. *Id*. at pp. 848–49. McAfee appealed his conviction to the Missouri Court of Appeals, which affirmed. McAfee remains incarcerated and now petitions this Court under 28 U.S.C. § 2254 for a writ of habeas corpus, alleging various errors by the state trial court and ineffective assistance of counsel. Doc. 1. For the reasons discussed below, the Court denies McAfee's petition for writ of habeas corpus.

I.   **Facts and Background**

The Missouri Court of Appeals described the pertinent facts as follows:

Defendant and Keisha Powell ("Victim") were together for nine years. In January of 2015, Victim ended the relationship. Victim's friend testified that Defendant constantly called and texted Victim after the breakup. The friend once heard Defendant tell Victim he had checked her mailbox and questioned why she had not been home the night before. Victim's co-worker also testified that Defendant repeatedly called the office numerous times throughout the day. Victim would not take his calls and had blocked his calls to her cell phone. The co-worker also saw Defendant drive back and forth past the office multiple times a day and said he would sometimes show up unexpectedly inside the office building, but Victim refused to see him. These unwanted calls and visits got more and more frequent as time went on.

Victim's friend told Defendant to leave Victim alone, which he said he would do, but that very night continuously called Victim's phone while she and her friend were out. The next morning, February 7, 2015, the friend called Victim at her home and could hear Defendant banging on Victim's door and angrily yelling for her to let him in. The friend went to Victim's house and observed a broken front window. An officer was dispatched to Victim's home to respond to this property damage. The friend took Victim to the courthouse, where Victim applied for and obtained restraining order against Defendant; it was later dismissed on February 19th for failure to prosecute. The friend testified that one time after that when she was on the phone with Victim, she could hear Victim and Defendant were arguing and it sounded to her like it was getting physical.

Around that same time, Victim began seeing a man she had met online. He testified that the first time they met in person, in a grocery store parking lot, Victim appeared afraid and was looking over her shoulder a lot. They were never able to hang out without discussing Defendant. At the end of February, the boyfriend testified that Victim starting [sic] staying at a hotel instead of at her home.

On March 21, 2015, Victim was at her cousin's when Defendant showed up. The cousin overheard Victim telling Defendant to "stop this." Another man at dinner that night also had a conversation with Defendant, in which Defendant talked about wanting to get back together with Victim. Out of the blue, Defendant said with a "kind of crazy" look "I'm going to get a gun." A few days later, on March 24, 2015, a tenant in Victim's office building observed a man he later identified as Defendant standing just inside the building entrance at approximately 8:00 a.m. This was the time Victim normally arrived at work, which Defendant knew; Defendant also knew that her co-worker did not normally arrive until later. Defendant made two calls to Victim, at 8:20 to her work phone and at 8:21 to her cell phone, which were likely not answered given their short duration. Victim was found by a co-worker at 8:30 slumped back in her desk chair with blood all over

her shirt.  She had been shot six times with a 40-caliber gun, including fatal wounds to her head and chest.  Defendant admitted owning a 40-caliber gun.  Defendant's phone records showed no further calls to Victim after that morning.

Police were able to track down Defendant in Arizona two days later.  When they attempted to pull Defendant's car over, he accelerated and attempted to flee.  Eventually, Defendant crashed into a fence, was arrested and taken into custody.  Police searched his vehicle and found two handwritten notes.  These were admitted at trial over Defendant's objection.  One of them expressed general despair "to whom it may concern" about life without Victim and the fact that she did not want anything to do with him anymore.  The other contained a threat: "Stay the [f---] away from her. I followed you today. I know where you staying. This ain't a joke. I mean every word. I say try me. This is not a threat, it's a promise. I put that on everything I love."  A prepaid phone was also recovered from Defendant's car along with a receipt indicating it had been purchased the day before.

After being taken into custody and Mirandized, Defendant agreed to talk with the police.  Defendant initially said he did not remember what happened on March 24, 2015, the day of Victim's murder.  As the interview progressed, he started remembering some things.  Defendant said he was upset that morning and started drinking at 5 a.m.  He had his 40-caliber firearm with him at that time.  He claimed the next thing he remembered was driving down the highway.  Later in the interview, Defendant admitted that he went to Victim's office to obtain a letter of reference from her so he could get an apartment and to retrieve his gun.  She gave him the gun, but when she refused to give him a letter Defendant said he "lost it." Defendant admitted he had the gun, stretched his arms out straight, pulled the trigger and held it down until all the rounds were emptied.  He said he then fled, dumped the weapon and drove to Arizona.  Defendant also said he bought a prepaid phone to use so police could not track his cell phone.  He admitted to a high speed chase with the Arizona law enforcement.  The videotape of the interview was played for the jury and admitted into evidence.  Defendant's written statement to police was also admitted and read to the jury.  Therein, Defendant stated that he "made a bad decision" and "ended her life."  He said that Victim kept badgering him about his cheating, would not help him and then it escalated into harsher words.  Before he knew it, she was dead; "I panicked and ran."  He said he was sorry, wished he could take that day back and asked God to have mercy on his soul.  At trial, Defendant recanted many of these statements, claiming they were beat out of him, and he testified that he did not kill Victim.

The jury found Defendant guilty, and he was sentenced to life imprisonment without parole for the murder and life imprisonment for the armed criminal action, to be served concurrently.

Doc. 14-4 at pp. 2–5.  McAfee appealed his convictions to the Missouri Court of Appeals, which affirmed.  Doc. 14-4; *State v. McAfee*, 545 S.W.3d 878 (Mo. App. E.D. 2018) (mem.).  McAfee

3

sought transfer to the Missouri Supreme Court, which that court denied. Doc. 14-5. McAfee filed a Missouri Rule 29.15 post-conviction relief motion, which the motion court denied after an evidentiary hearing. Doc. 14-8 at p. 2; Doc. 1-1. He appealed this decision, and the Missouri Court of Appeals affirmed the motion court's denial of post-conviction relief on the merits. *Id.*; *McAfee v. State*, 620 S.W.3d 683 (Mo. App. E.D. 2021) (mem.). McAfee now seeks habeas corpus relief in this Court pursuant to 28 U.S.C. § 2254.

## II.     Standard

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005), *as amended* (Jun 23, 2005). Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 575 U.S. 312, 315 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by the AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). For a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C. § 2254(d)(1)-(2). A determination of a factual issue made by a state court is presumed correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. § 2254(e)(1).

A state court's decision is "contrary to" clearly-established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). An unreasonable application of clearly established Supreme Court precedent occurs where the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Finally, a state court decision may be considered an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id*.

### III.  Discussion

McAfee asserts ten grounds for relief in his habeas petition. Doc. 1 at pp. 3–5. In grounds 1 through 6, McAfee claims that the trial court erred in admitting into evidence several of Powell's out-of-court statements. *Id*. at pp. 8–19. In grounds 7 and 8, McAfee claims that the trial court erred in refusing to declare a mistrial after two outbursts in the courtroom. *Id*. at pp. 19–22. In ground 9, McAfee claims that the trial court erred in admitting into evidence unsigned, handwritten notes found in McAfee's car. *Id*. at 22–23. In ground 10, McAfee claims that his trial counsel ineffectively "failed to adduce favorable evidence that a fingerprint taken at the crim scene did not match [McAfee]." *Id*. at 23–25. To the extent McAfee attempts to raise additional claims in his traverse, Doc. 16, the Court denies them. *See Cacoperdo v.*

5

*Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief.").

### A.   Grounds 1 through 6

McAfee challenges the trial court's decision to admit portions of the testimony of several witnesses who testified to Powell's out-of-court statements. *Id*. at pp. 8–19. These statements included testimony that Powell told a co-worker that McAfee threatened to kill her, and that Powell told her cousin and a friend that if something happened to her, McAfee did it. Doc. 14-4 at pp. 5–6. McAfee argued on direct appeal that all the challenged evidence was inadmissible hearsay under Missouri's law of evidence and that some of the statements were also testimonial hearsay and admitted in violation of the Confrontation Clause. Doc. 14-1 at pp. 31–63. The Court of Appeals rejected McAfee's arguments because the court found that error, if any, in admitting the statements was harmless beyond a reasonable doubt. Doc. 14-4 at p. 10; *see State v. Justus*, 205 S.W.3d 872, 881 (Mo. 2006); *see Chapman v. California*, 386 U.S. 18, 24 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). As a threshold matter, the Court finds that the Missouri Court of Appeals adjudicated McAfee's claim "on the merits" within the meaning of § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 301 (2013).

Because the Court of Appeals adjudicated his claim on the merits, McAfee cannot obtain habeas relief under § 2254(a) unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" under § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2).

6

The Court of Appeals was "convinced beyond a reasonable doubt that [Powell]'s statements did not contribute to [McAfee]'s convictions." Doc. 14-4 at p. 8. The court found that the out-of-court "statements were *not* an overwhelming amount of damaging hearsay testimony, they did not pervade the trial, and they were *not* heavily relied on by the prosecutor in closing argument." *Id.* (emphasis in original) (internal quotation marks omitted). The court further found that "much of the challenged evidence was cumulative to other properly admitted and unchallenged evidence," and that the "prosecutor spent about six sentences of his closing argument on [the challenged] statements," highlighting instead "the two critical pieces of evidence in the case: [McAfee]'s incriminating statements and the eyewitness identification. *Id*. at pp. 8–9. In sum, the unchallenged evidence of McAfee's guilt was "overwhelming." *Id*. at p. 8.

The Court of Appeals affirmed the trial court's decision to overrule McAfee's objection as to the introduction of the notes because it was "convinced beyond a reasonable doubt that the error, if any, in admitting the challenged statements was harmless." Doc. 14-4 at pp. 9–10. First, this Court takes "no issue with the Missouri court's application and interpretation of its evidentiary rules." *Skillicorn v. Luebbers*, 475 F.3d 965, 974 (8th Cir. 2007) (citing *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994)). Second, the court reasonably applied Federal law, including the *Chapman* harmless-beyond-a-reasonable-doubt standard. And further, the factual findings of the Court of Appeals are "presumptively correct" and "enjoy support in the record." *See Ryan*, 387 F.3d at 790. Nothing in McAfee's petition or the state-court records suggests that the Court of Appeals' ruling was "based on an unreasonable determination of the facts." *See* § 2254(d)(2). Accordingly, the Court denies the first through sixth grounds in McAfee's petition for habeas relief.

### B. Grounds 7 and 8

McAfee challenges the trial court's decision not to declare a mistrial after two incidents involving threatening outbursts made towards the defendant in the presence of the jury. Doc. 1 at pp. 19–22. After he argued this point on direct appeal, the Missouri Court of Appeals denied his claim, explaining that the "family's outbursts and the witness's extraneous comments here were spontaneous, brief, and not provoked by the prosecutor." Doc. 14-4 at p. 11. Additionally, the trial court "carefully examined each juror," gave "curative instructions," determined that the jurors could remain impartial after the outbursts. *Id*. Further, the court found no prejudice due to the outbursts "in view of the overwhelming evidence against [McAfee]." *Id*. As a threshold matter, the Court finds that the Missouri Court of Appeals adjudicated McAfee's claim "on the merits" within the meaning of § 2254(d). *See Johnson*, 568 U.S. at 301.

Because the Court of Appeals adjudicated his claim on the merits, McAfee cannot obtain habeas relief under § 2254(a) unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" under § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2).

The Court of Appeals affirmed the trial court's decision not to declare a mistrial after the outbursts. Doc. 14-4 at p. 10–11. The court found that the "trial court took the appropriate steps to remedy any potential for prejudice from these outbursts or the witness's comment by removing or admonishing the offenders, carefully examining each juror and giving curative instructions to the jury." *Id*. at p. 11. To the extent the Court of Appeals applied Federal law, its application was reasonable. Further, the factual findings of the Court of Appeals are "presumptively correct" and "enjoy support in the record." *See Ryan*, 387 F.3d at 790. Nothing

in McAfee's petition or the state-court records suggests that the Court of Appeals' ruling was "based on an unreasonable determination of the facts." *See* § 2254(d)(2). Accordingly, the Court denies the seventh and eighth grounds in McAfee's petition for habeas relief.

**C.     Ground 9**

McAfee challenges the trial court's decision to overrule McAfee's objection to the introduction of two notes found by police in his car. Doc. 1 at pp. 22–23. McAfee argued on direct appeal that the trial court's decision was wrong because the notes were hearsay, not relevant, and not authenticated. *Id*. at p. 22. The Missouri Court of Appeals denied his claim, explaining that, because the notes were handwritten and found in McAfee's car—which had been in continuous flight from the murder scene—and because the sentiments in the notes were consistent with other evidence about McAfee's feelings about Powell, the circumstantial evidence sufficed to authenticate the notes. Doc. 14-4 at p. 9 n.3 (citing *State v. Hosier*, 454 S.W.3d 883, 899 (Mo. 2015)). As a threshold matter, the Court finds that the Missouri Court of Appeals adjudicated McAfee's claim "on the merits" within the meaning of § 2254(d). *See Johnson*, 568 U.S. at 301.

Because the Court of Appeals adjudicated his claim on the merits, McAfee cannot obtain habeas relief under § 2254(a) unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" under § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2).

The Court of Appeals affirmed the trial court's decision to overrule McAfee's objection to the introduction of the notes. Doc. 14-4 at p. 9. First, this Court takes "no issue with the Missouri court's application and interpretation of its evidentiary rules." *Skillicorn v. Luebbers*,

9

475 F.3d 965, 974 (8th Cir. 2007) (citing *Schleeper*, 36 F.3d at 737). The court found that the state properly authenticated the notes based on circumstantial evidence, and that factual finding of the Court of Appeals is "presumptively correct" and "enjoy[s] support in the record." *See Ryan*, 387 F.3d at 790. Nothing in McAfee's petition or the state-court records suggests that the Court of Appeals' ruling was "based on an unreasonable determination of the facts." *See* § 2254(d)(2). Accordingly, the Court denies the ninth ground in McAfee's petition for habeas relief.

        **D.**        **Ground 10**

McAfee claims his trial counsel ineffectively failed to introduce evidence that a fingerprint taken from the crime scene did not belong to McAfee. Doc. 1 at p. 23. After he argued this point in the state post-conviction review court, the Missouri Court of Appeals denied his claim because the fingerprint evidence "would not have unqualifiedly supported the defense theory." Doc. 14-8 at p. 3 (*quoting Collings v. State*, 543 S.W.3d 1, 17 (Mo. 2018)). The Court of Appeals noted that the motion court found that "[t]he fingerprint that was found on the inside of one of the doors of the public building, accessible by the public, had very little, if any, probative value." *Id*. (alteration in original). Additionally, because trial counsel explained his trial strategy, the Court of Appeals concluded that McAfee "failed to overcome the presumption that trial counsel used reasonable strategy in not presenting evidence regarding the fingerprint." *Id*. at p. 4. As a threshold matter, the Court finds that the Missouri Court of Appeals adjudicated McAfee's claim "on the merits" within the meaning of § 2254(d). *See Johnson*, 568 U.S. at 301.

Because the Court of Appeals adjudicated his claim on the merits, McAfee cannot obtain habeas relief under § 2254(a) unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" under § 2254(d)(1), or "was based

10

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2). To grant relief under § 2254, the Court must conclude that the state court unreasonably applied the *Strickland* test or that, in reaching its conclusions regarding the performance of McAfee's attorney, it made unreasonable factual conclusions. *Gabaree v. Steele*, 792 F.3d 991, 998 (8th Cir. 2015). *Strickland* requires McAfee to show that his counsel's performance was deficient, and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The Court of Appeals affirmed the motion court's conclusion that McAfee's trial counsel was not deficient for failing to introduce the fingerprint evidence because it would not have unqualifiedly supported the defense's theory and because the choice of one reasonable trial strategy over another is not ineffective assistance of counsel. Doc. 14-8 at p. 4. The Court of Appeals' application of *Strickland* was reasonable. The factual findings of the Court of Appeals, moreover, are "presumptively correct" and they also "enjoy support in the record." *See Ryan*, 387 F.3d at 790. Nothing in McAfee's petition or the state-court records suggests that the Court of Appeals' ruling was "based on an unreasonable determination of the facts," including the motion court and Court of Appeals' determination that the fingerprint evidence "would not have unqualifiedly supported the defense's theory. Doc. 14-8 at p. 4 (internal quotation marks omitted); *see* § 2254(d)(2). Accordingly, the Court denies the tenth ground in McAfee's petition for habeas relief.

## IV.   Evidentiary Hearing

McAfee's requests an evidentiary hearing further develop his ineffective-assistance ground for relief regarding fingerprint evidence. Doc. 3. However, McAfee already presented this ground for relief at an evidentiary hearing in state court. Doc. 14-8 at pp. 3–4. "Only if the

11

habeas petitioner 'was unable to develop his claim in state court despite diligent effort' is an evidentiary hearing not barred by § 2254(e)(2)." *Williams v. Norris*, 576 F.3d 850, 860 (8th Cir. 2009) (quoting *Williams v. Taylor*, 529 U.S. 420, 437 (2000)).  Because McAfee developed his claim in state court and has not otherwise attempted "to satisfy [§ 2254(e)(2)'s] mandatory restrictions," the Court will not hold an evidentiary hearing.  *Williams*, 576 F.3d at 860.

## V.     Certificate of Appealability

The Court finds McAfee has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. 28 U.S.C. § 2253(c); *see also Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings").  Therefore, the Court will not issue a certificate of appealability as to any claims raised in McAfee's § 2254 petition.

## VI.    Conclusion

The Court denies Petitioner Michael McAfee's [1] petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody and dismisses McAfee's petition with prejudice.  The Court denies McAfee's [3] [17] motions for an evidentiary hearing and a certificate of appealability.

So Ordered this 23rd day of November 2021.

*SL R. CL*
_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**